UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER ALAN CAIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 7:22-cv-28-GMB ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION**

On November 28, 2018, Plaintiff Christopher Cain filed an application for a period of disability and disability insurance benefits ("DIB"). His alleged disability onset date is May 7, 2018. Cain's application for benefits was denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on November 9, 2020, and denied Cain's claims on February 2, 2021. Cain requested a review of the ALJ's decision by the Appeals Council, which declined review on November 2, 2021. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of November 2, 2021.

Cain's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a

United States Magistrate Judge. Doc. 14. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Cain bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his former occupation?
> (5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Cain was born on April 2, 1979, and was 39 years old on his alleged onset date. R. 44 & 263. His primary physical complaint is back pain. R. 51. He has had two back fusion surgeries. R. 51–52. His primary mental complaints are attention deficit hyperactivity disorder ("ADHD"), anxiety, and Post Traumatic Stress Disorder ("PTSD"). R. 54–56. In his disability report, Cain identified the following medical conditions: back injury, ADHD, sleep apnea, confusional arousal disorder, and PTSD. R. 303. Cain graduated from high school and attended trade school for three years. R. 45. He has worked as a brick layer, electrician, front-end loader operator, and auto parts inspector. R. 45, 48–50, 69, 302 & 304.

Cain testified at his hearing that he has severe back pain that causes his legs to "go numb." R. 51 & 54. Sometimes he is unable to walk because the pain shoots

from his back down to his legs and "prevents [him] from moving." R. 53. Cain can walk for 35 to 50 yards before having to sit down (R. 57), but if he sits for too long, his legs go numb and he cannot stand. R. 53. It takes as little as five to ten minutes for the numbness to occur in his legs, and he can stand for five to ten minutes before needing to sit down. R. 53 & 57. Cain is able to walk up stairs but walking down stairs results in radiating pain in his legs. R. 58. He estimates that he can lift only eight to ten pounds. R. 57. He cannot bend over to pick something off the ground, does not do laundry, and does not bend his knees to stoop or squat. R. 57–58.

As for his mental impairments, Cain testified that his PTSD affects his ability to stay on task and to concentrate. R. 55. He takes medicine that controls some of his PTSD symptoms. R. 55. He has anxiety and panic attacks "where [he] can't hardly breathe," which are caused by circumstances "like talking to people and being in public places." R. 56. He worries constantly, wakes up feeling like he is under attack, and has angry outbursts where he blacks out. R. 56. Cain sees a therapist every two weeks. R. 56.

As to his daily activities, Cain testified that he makes simple things to eat like sandwiches. R. 58. He does not perform any housework. R. 59. He cannot bathe and dress himself but receives help from his wife with tasks like putting on and removing his socks and shoes. R. 58–59. She sometimes helps him off the toilet or to get in and out of the shower. R. 59. When asked how he spends his daytime hours,

Cain testified that he walks to his mother-in-law's house, 35 to 50 yards away from his own, to visit with her and also helps with his sons' schoolwork and snacks. R. 59. He also may watch his sons play sports in the yard. R. 60. However, there are some days his pain is so bad that he cannot get out of bed. R. 61. Those days occur three or four times per month. R. 61.

One of Cain's mental health treatment providers is psychologist Dr. Todd Walborn, who diagnosed him with PTSD, ADHD, and confusional arousal. R. 699. He explained that

> Mr. Cain suffers from chronic pain in his lower back, the three psychological conditions listed above, and an inability to be gainfully employed. These problems are interrelated. The chronic pain is exacerbated by the depression and anxiety of the PTSD. The depression and anxiety lead to his attention problems (ADHD) being more severe. His inability to work and support his family contribute to the depression and anxiety. His inability to work is secondary to his chronic pain, inattention, depression and anxiety.

R. 699. In a supplemental note, Dr. Walborn observed that Cain "requires psychotherapy to deal with his emotions related to PTSD as well as the chronic pain. His emotional response to the chronic pain is understandable but makes him unable to function in a work environment." R. 825–26.

The ALJ issued her decision on February 2, 2021. R. 31. Under step one of the five-step evaluation process, she found that Cain has not engaged in substantial gainful activity since his alleged onset date of May 7, 2018. R. 18. The ALJ concluded that Cain suffered from the severe impairment of degenerative disc

7

disease of the lumbar spine status post L5-S1 and L4-5 fusions.[2] R. 18. She found Cain's other impairments of depression, anxiety, bipolar disorder, PTSD, ADHD, and sleep apnea to be non-severe. R. 18–24. The ALJ noted that Cain's medically determinable impairments cause more than minimal limitations to his ability to perform basic work activities. R. 24–25. But she concluded at step three of the analysis that none of Cain's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 24–25.

Before proceeding to the fourth step, the ALJ determined that Cain had the residual functional capacity ("RFC") to perform a limited range of light work. R. 51. More specifically, she found that Cain had the following limitations with respect to light work, as defined in 20 C.F.R. § 404.1567(b):

> [H]e can occasionally climb ramps and stairs; he can never claim ladders, ropes, or scaffolds; he can frequently balance; he can occasionally stoop, kneel, crouch, and crawl; he can never work at unprotected heights, with hazardous machinery, or around open bodies of water; he is precluded from commercial driving; he can have occasional exposure to extreme cold and vibration; and he can understand, remember, and carry out simple instructions consistent with unskilled work activity.

R. 25. At the fourth step, the ALJ considered Cain's age, education, work experience, and RFC in determining that he was not capable of performing his past relevant work as an electrician, brick layer, front end loader, and parts inspector.

---

[2] The ALJ found Cain's other alleged impairments to be non-severe. R. 20. Cain does not challenge these findings.

R. 29. However, the ALJ determined that there were other jobs existing in the national economy that Cain could perform, including work as a ticket taker; mail sorter, non-postal; and inspector. R. 30. Therefore, the ALJ concluded that Cain was not disabled within the meaning of the Social Security Act from May 7, 2018, through the date of the decision. R. 30. Based on these findings, she denied Cain's application for benefits. R. 31.

## IV. DISCUSSION

Cain makes three[3] arguments in favor of remand: (1) the ALJ improperly assessed the credibility of his subjective complaints of pain; (2) the ALJ improperly evaluated the opinions of his treating psychologist; and (3) the ALJ erred in framing the hypothetical to the VE. Doc. 17 at 17–25. For the following reasons, the court finds that substantial evidence supports the ALJ's determinations and that she applied the proper standards to reach her conclusions.

### A. Subjective Complaints of Pain

In addressing a claimant's subjective description of his pain and symptoms, the law is clear that

---

[3] Instead of clearly delineating his arguments, Cain's brief moves from one point to the next without any clear transitions. The court has made every attempt to address each argument Cain fully develops in his brief in support of remand. Although Cain makes passing reference to other potential alleged errors, the court does not address any issues unsupported by substantive arguments containing an explanation of the asserted error, citations to the record, and supporting case law. These arguments have been abandoned. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

> to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate the symptoms' intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 20 C.F.R. §§ 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how his symptoms affect him. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required to conduct an explicit symptom analysis, but the reasons for her findings must be clear enough to be obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial

supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found here that Cain's medically determinable impairments could reasonably be expected to produce the alleged symptoms but that his statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 27.  This determination is supported by substantial evidence.

Cain's contention that the ALJ did not consider the evidence in its entirety or his condition as a whole (Doc. 17 at 20–22) is incorrect.  The ALJ thoroughly examined the medical evidence in the record in determining that Cain's subjective complaints were not entirely credible, and she adequately articulated the reasons her finding. R. 19–22, 25 & 27–29; *see Foote*, 67 F.3d at 1562.  Substantial evidence supports this finding.  As to his physical impairments, Cain's complaints of disabling pain were inconsistent with the following medical evidence:

- In October 2018, Cain saw a new orthopedist and complained of ongoing pain with weakness and electrical sensations in his lower extremities.  A needle electromyogram showed he had "likely resolving" lumbosacral radiculopathy consistent with his recent surgery.  Physical examination showed a moderately reduced range of motion and positive straight leg raise testing on both sides with generalized weakness due to pain but overall 4/5 strength. R. 429–33.

- After a car accident in November 2018, Cain reported moderate pain with sciatica, but on examination, Cain had normal range of motion, no focal neurological deficits, normal sensory and motor function, and normal coordination.  An x-ray showed normal alignment and appearance, and there was no evidence of any other abnormality. R. 446–47.

- At physical therapy in December 2018, Cain was able to complete all exercises without wincing or rest breaks, and in January 2019 his orthopedist noted that although Cain reported some ongoing symptoms in his legs, he had excellent strength with no weakness and was able to stand from a seated position without assistance. R. 681 & 685.

- A May 2019 MRI of Cain's lumbar spine showed degeneration at L4–5, but his L5–S1 fusion remained unremarkable.  Cain went to a different orthopedist, who noted that his lower extremities were areflexic but his sensory and motor functions were grossly intact, and he had positive straight leg raise testing and decreased range of motion due to guarding. R. 704 & 712. Cain underwent a myelogram, CT scan, and discogram of his lumbar spine, where he was observed to have pain on standing with normal ambulation, negative straight leg raise testing, normal muscle bulk and tone, and normal gait and station. R. 694 & 705.

- After L4–5 fusion surgery in June 2019, Cain reported improvement but discomfort in his buttock.  On examination, there was no evidence of new motor or neurological deficits, and an x-ray showed the fusion hardware was in the correct position. R. 710.

- An October 2019 examination showed Cain was grossly neurologically intact, and an x-ray of his lumbar spine showed his bone graft was in a good position. R. 724.

- Cain continued to complain of pain in December 2019, but an MRI did not show any recurrent stenosis, herniation, or neural compromise that would cause pain or that further surgery was warranted.  The doctor recommended a functional capacity evaluation ("FCE"). R. 701–02, 777 & 780.  The FCE was invalidated due to Cain's inconsistent and submaximal effort. R. 765.

Cain also complains that the ALJ improperly evaluated the limiting effects of his mental impairments.  The court again disagrees.  Cain's complaints of disabling symptoms due to his mental impairments, such as panic attacks and an inability to concentrate, are inconsistent with the following medical evidence:

- Between March 2018 and February 2019, Cain's psychiatrist, Dr. Arnand Schachter, repeatedly noted that he had no focus problems and was fully alert and oriented with intact attention, concentration, and average fund of knowledge. R. 606, 609–10, 612–13, 615–16 & 618–23.

- Treatment notes from St. Vincent's in May and July 2018 show that Cain did not report any mental problems, and the examination notes reflect that Cain was cooperative and pleasant with appropriate mood and affect and normal judgment. R. 520–21 & 564–66.

- In September 2018, treatment notes from psychologist Dr. Walborn noted that Cain had appropriate social skills, a pleasant and cooperative demeanor, normal or above-normal intelligence, no anxiety, no mania, no hypomania, and appropriate eye contact. R. 420.

- In October and November 2018, Cain sometimes denied and sometimes admitted having anxiety or depression. Examinations showed he was fully alert and oriented, had a normal mood and appropriate affect, intact judgment and insight, normal attention span and ability to concentrate, and a normal mental status exam. R. 434–35, 447 & 587–88.

- In February 2019, Dr. Schachter noted Cain's mood as manic and increased his medications. Otherwise, Cain's thoughts were goal-directed and he had good insight and judgment and intact memory. R. 607.

- Later that month, Cain attended a consultative examination with Dr. John Neville where Cain reported his mood as more stable and better concentration with the change in medication dosage. During Dr. Neville's examination, Cain had a neutral mood, was alert and oriented, could do a variety of memory and concentration tasks, was not confused, and had no abnormal thought content, good insight and judgment, and average intellectual functioning. Dr. Neville observed Cain as attentive and cooperative and that he followed instructions well. R. 626–28.

- In May 2019, Cain was again observed as having a normal affect and mood and being active, alert, cooperative, and fully oriented. R. 694.

- In October 2020, Dr. Walborn noted that Cain had appropriate social skills, a pleasant and cooperative demeanor, and normal or above intelligence, but did

exhibit some signs of anxiety and depression. R. 825.

The ALJ also considered Cain's daily activities and their relationship to his alleged physical and mental symptoms. R. 22 & 25–26. For example, Cain reported to Dr. Neville in February 2019 that he could drive, shop with his wife, perform the vast majority of his self-care and personal hygiene activities, and accomplish household chores. R. 627. Similarly, he reported in January 2020 that he performs light housework, drives short distances, and does not need assistance with his self-care activities other than putting on his socks and shoes. R. 766. He also stated in his function report that he participated in the following social activities: assisting with homework, watching movies, attending basketball practice, going to church, and attending medical appointments. R. 343. These reported activities further undermine his claim of disabling limitations. *See Lynn v. Comm'r of Soc. Sec.*, 791 F. App'x 888, 889 (11th Cir. 2020) (determining that substantial evidence supported the ALJ's finding that the claimant's subjective complaints were inconsistent with objective medical evidence and other aspects of her testimony, including her reported activities of operating a motor vehicle, preparing meals, performing household chores, doing laundry, and grooming herself); *Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (holding that the ALJ properly found a subjective complaint inconsistent with a record of simple daily activities).

The ALJ also commented on Cain's noncompliance with his medical

professionals' recommendations in discrediting his claim of disabling pain.[4] R. 20 & 28. For example, Dr. Schachter recommended psychotherapy in March 2018, and Cain consistently met with Dr. Walborn until September 2018. R. 421, 622–23 & 668–72. Although Dr. Walborn told Cain during their September 2018 visit that he needed continue psychotherapy (R. 421), the record shows that Cain did not return to Dr. Walborn for regular therapy after that visit and even refused therapy on several occasions.[5] R. 607, 613 & 616. As another example, Cain's orthopedist told him to stop smoking because it could delay bone growth after his surgeries (R. 710–11), but he continued to smoke. R. 724 & 777. In fact, Cain admitted that he smoked up to half of a pack of cigarettes every day. R. 51. Cain also stopped using a bone stimulator and did not regularly attend physical therapy after his L4-5 fusion surgery. R. 724.

---

[4] The ALJ did not explore Cain's ability to pay for treatment. As a general rule, "the ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment." *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) (citing S.S.R. 96-7). Poverty can excuse a claimant's non-compliance with medical treatment. *Id.* (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). Accordingly, the ALJ ordinarily must consider whether the claimant can afford medical treatment before denying an application for disability benefits based on a failure to comply with prescribed medical treatment. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). But where, as here, the failure to follow medical treatment is not a principal factor in the ALJ's decision, "the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error." *Id.* (citing Ellison, 355 F.3d at 1275).

[5] The ALJ also noted the inconsistency between Cain's testimony at the hearing that he continued to see a therapist every two weeks (R. 56) and the record evidence of his refusal to attend therapy sessions and failure to visit Dr. Walborn since September 2018. R. 20, 28, 607, 613 & 616; *see* 20 C.F.R. § 404.1529(c)(4) (permitting an ALJ to consider conflicts between a claimant's testimony and the record when evaluating the severity of symptoms).

15

For all of these reasons, the ALJ correctly considered "the consistency of [Cain's] statements" with the remainder of the evidence in the record. *See* SSR 16-3p, 2017 WL 5180304, at *8. The court finds that the ALJ's determinations of Cain's credibility with respect to his subjective complaints are supported by substantial evidence.

### B. Mental Health Professional Opinions

Cain argues that the ALJ improperly rejected the opinions of his treating psychologist Dr. Walborn. Doc. 17 at 23–24. The court disagrees and finds that the ALJ properly considered and articulated his evaluation of the psychologist's opinions consistent with the applicable regulations such that substantial evidence supports the ALJ's decision.

As a threshold matter, Cain's brief relies on an obsolete hierarchy of medical opinions. Before March 27, 2017, the opinions of examining physicians were given more weight than non-examining physicians, treating physicians more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 416.927(c)(1–5). Under the new regulations, however, an ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id*. Instead, the new regulation provides several factors informing the ALJ's decision on the weight to give a claimant's proffered

16

medical opinions. Those factors include the supportability of the medical opinion, its consistency with other record evidence, the physician's relationship with the claimant, the physician's specialty, and other relevant information, such as the physician's familiarity with the other record evidence and with making a claim for disability. 20 C.F.R. § 404.1520c(c)(1)–(5). In *Harner v. Social Security Administration*, 38 F.4th 892, 897–98 (11th Cir. 2022), the Eleventh Circuit confirmed that these new regulations eliminate the treating physician hierarchy. Here, the new regulations apply because Cain filed his claim on November 28, 2018. *See* 20 C.F.R. § 404.1520c(a) (stating that the new regulations apply to "claims filed . . . on or after March 27, 2017").

The new regulations also changed the standards an ALJ should apply when articulating her assessment of medical source opinions. First, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). Second, the ALJ does not have to "give good reasons" for the weight she assigns to treating source opinions. *Compare* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."), *with* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from

your medical sources.").

The court finds that the ALJ properly evaluated Dr. Walborn's statements under the new regulations. Put simply, the ALJ followed the relevant regulations and properly analyzed Dr. Walborn's findings. She explained how Dr. Walborn's opinions were not supported by or consistent with his own examinations and the other objective medical evidence. R. 20–21. For example, throughout his own treatment notes, Dr. Walborn noted that Cain had appropriate social skills, a pleasant and cooperative demeanor, normal or above intelligence, unimpaired speech, no anxiety, no mania, no hypomania, appropriate eye contact, and no psychosis or personality disorder. R. 420 & 825. The ALJ also noted that Dr. Walborn's statements were inconsistent with examination findings from Dr. Schachter, Cain's psychiatrist. Dr. Schachter repeatedly observed that Cain was alert and oriented, had intact concentration and an average fund of knowledge, goal-directed thoughts, good insight and judgment, and intact memory. R. 606–23. This evidence undermines Dr. Walborn's assertion that Cain's mental impairments are completely disabling. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (finding medical statement unpersuasive where unsupported by source's own treatment notes and inconsistent with other medical record).

Moreover, as both the ALJ and the Commissioner argue, Dr. Walborn did not provide a medical opinion consistent with the regulations. A medical opinion "is a

statement from a medical source about what you can still do despite your impairment(s)." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The opinion must state whether the claimant has limitations or restrictions in one of four ways: (1) ability to perform physical demands of work activities; (2) ability to perform mental demands of work activities; (3) ability to perform other demands of work; or (4) ability to adapt to environmental conditions. *Id.* Dr. Walborn's notes, diagnoses, and statement that Cain is unable to work do not qualify under these regulations as a medical opinion.

For these reasons, the court concludes that the ALJ applied the proper standard in evaluating Cain's medical evidence and did not err in evaluating Dr. Walborn's opinion. The ALJ clearly articulated her reasons for finding that the opinion was not well supported or consistent with other medical records. Substantial evidence supported this decision.

**C.    VE Hypothetical**

Finally, Cain argues that the VE hypothetical did not include Dr. Walborn's proposed mental limitations. Doc. 17 at 23. An ALJ must pose a hypothetical question to the VE that comprehensively describes the claimant's impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ is not required to include findings that she properly rejects as unsupported by the record. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).

The ALJ's hypothetical to the VE contained all of Cain's legitimate limitations. First, the ALJ included Cain's credible physical limitations in the VE's hypothetical. As discussed above, the ALJ properly rejected Cain's more restrictive subjective complaints. Second, the ALJ also properly refused to incorporate Dr. Walborn's mental limitations because they were not supported by his own findings or records from other medical sources. Because the law does not require the ALJ to include in the VE's hypothetical any unsupported limitations, *Crawford*, 363 F.3d at 1161, the ALJ here did not err in framing her hypothetical to the VE.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on May 17, 2023.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE